UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WANDA TROUILLIER * | |
|     Plaintiff * | |
| * | CASE NO.  20-1588 |
| VERSUS * | |
| * | JUDGE  JAY C. ZAINEY |
| * | |
| HOBBY LOBBY STORES, INC. * | MAGISTRATE JUDGE KAREN |
| * | WELLS ROBY |
| * | |
| * | JURY DEMANDED |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Hobby Lobby Stores, Inc. (hereafter "Hobby Lobby"), who files this Reply Memorandum in Support of its Motion for Summary Judgment. (R. Doc. 33).

**A. Summary Judgment is Appropriate on the Issue of Constructive Notice**

In her Opposition, Plaintiff alleges that the issue of actual or constructive notice is a factual determination to be made by the tier of fact.[1] However, the Louisiana Supreme Court has reaffirmed its position and established that a Motion for Summary Judgment is a proper vehicle for disposition of similar claims. In *Babin v. Winn-Dixie Louisiana, Inc.*, 00-0078 (La. 6/30/00), 764 So.2d 37, the Supreme Court reviewed a factual situation where the plaintiff claimed to have been shopping in defendant's store for five to ten minutes before he slipped and fell on several plastic toothpick boxes. He admitted in his deposition that he did not know how the boxes got on the floor or how long they had been on the floor before he fell. The Supreme Court found that the Summary Judgment for defendant was proper. They reasoned that the plaintiff could present no

---
[1] R. Doc. 46, Opposition at pp. 7.

1

testimony which would meet his burden of producing factual support significant to establish that he could satisfy his evidentiary burden at trial. The same is true here and thus, summary judgment is an appropriate vehicle to dismiss Plaintiff's claims.

**B. The Only Issue Before this Court is Plaintiff's Failure to Prove Actual or Constructive Notice of the Alleged Condition**

As noted in Defendants' original memorandum, this case arises under Louisiana's Merchant Liability Act, LSA-R.S. 9:2800.6. It provides, in relevant part, that claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

**(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.**

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

At issue in the instant Motion for Summary Judgment is only one of the above-listed factors: whether defendants "either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence." However, in her Opposition, Plaintiff alleges that Defendant "concedes that the condition of the floor created an unreasonable risk of harm to Plaintiff that was reasonably foreseeable." This is a fallacy. Hobby Lobby is not required to refute every element of Plaintiff's claim in its motion for summary judgment and need only show that that Plaintiff lacks the requisite proof on one element of her claim.[2] Plaintiff's opposition makes much of the fact that Hobby Lobby did not seek summary judgment on every element of Plaintiff's claim, however, no such inference should be drawn from Hobby Lobby's Motion. Hobby Lobby in no way concedes that the condition of the floor created an unreasonable risk of harm to Plaintiff

---

[2] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

that was reasonably foreseeable.

### C. Plaintiff's Opposition Does Not Create an Issue of Fact as to Whether Defendants Had Actual or Constructive Notice of the Condition

In her Opposition to Defendant's Motion for Summary Judgment, Plaintiff argues that the "jelly kind of substance" was on the floor of the Hobby Lobby for long enough prior to her fall that Hobby Lobby had constructive notice of the dangerous condition. However, where a plaintiff relies upon constructive notice under La. R.S. 9:2800.6(B)(2), the Plaintiff must come forward with "positive evidence" showing the damage-causing condition existed for some period of time and that such time was sufficient to place the merchant defendant on notice of its existence.[3] This element is referred to as the "temporal" element.[4] Absent some showing of the temporal element, there can be no inference of constructive notice.[5] The plaintiff must make a positive showing of the existence of the condition prior to the fall; **mere speculation that the condition may have existed for some period of time is insufficient**.[6] To the contrary, a defendant merchant is not required to make a positive showing of the absence of the existence of the condition prior to the fall.[7] Notwithstanding that such would require the defendant to prove a negative, La. R.S. 9:2800.6 simply does not provide a shifting of the burden.[8] Though the time period need not be specific in minutes or hours, constructive notice requires that the plaintiff prove the condition existed for some time period before the fall.[9]

In her deposition, Plaintiff testified she slipped on an object that she thought was bath beads, which she claimed created a gooey substance on the floor.[10] Plaintiff testified she does not know

---

[3] *White v. Wal–Mart Stores, Inc.,* 97-0393, p. 9 (La. 9/9/97), 699 So.2d 1081.
[4] *Id.*
[5] *Id.*
[6] *Babin v. Winn–Dixie La., Inc*., 00-0078, p. 7 (La. 6/30/00), 764 So.2d 37, 40.
[7] *White*, 97–0393, p. 9, 699 So.2d at 1084.
[8] *Id.,* 97–0393, pp. 9–10, 699 So.2d at 1084.
[9] *Flowers v. Wal–Mart Stores, Inc.,* 12-140, p. 4 (La. App. 5 Cir. 7/31/12), 99 So.3d 696, 698.
[10] *Id*. at p. 163:2-24.

how those bath beads came to be on the floor or how they got smashed to create the gooey substance.[11] Plaintiff testified she has no information to establish how long the bath beads came to be on the floor or were smashed before the incident.[12] Moreover, Plaintiff has no information to establish that Hobby Lobby or any employee caused the bath beads to be on the ground or whether Hobby Lobby or any employee had any knowledge that the beads had fallen on the ground or were smashed before the incident.[13]

Plaintiff's sister, Una Faciane, testified she did not see Wanda fall.[14] She testified she did not have any conversations with Hobby Lobby customers or employees before the incident, and she did not overhear anything employees or customers said, including any warning, before the fall.[15] Ms. Faciane further testified that she has "no idea" how the bath beads got on the ground or got smashed.[16] She stated, "I didn't see any children around, I didn't see anybody around that area. I don't know how that happened."[17] Ms. Faciane didn't have any conversations with any employees or customers before or after the incident, and she did not overhear anything specific that any employee or customer said after the accident.[18] More importantly, Ms. Faciane testified she has no information to establish how the bath beads got on the ground, how long they were on the ground before the incident, or that any Hobby Lobby employee knew the bath beads were on the ground before the incident.[19]

Now, in her Opposition to Defendant's Motion for Summary Judgment, Plaintiff submits "there is sufficient circumstantial evidence to suggest that the substance was on the floor for such

---

[11] *Id.* at p. 163-164:25-3.
[12] *Id.* at p. 164:8-14.
[13] *Id.* at p. 166-167:19-6.
[14] R. Doc. 33-6, Deposition of Una Faciane at p. 32:1-7.
[15] *Id.* at p. 32:15-23.
[16] *Id.* at p. 44:11-14.
[17] *Id.* at p. 44:17-20.
[18] *Id.* at p. 51:16-25.
[19] *Id.* at p. 54-55:8-4.

a time that the Defendant should have discovered it in the exercise of reasonable case."[20] However, the "circumstantial evidence" put forth by Plaintiff is that "the area was not inspected for at least an hour after opening."[21] In other words, Plaintiff attempts to infer that the substance would have been on the ground for that period of time. However, courts have rejected such "negative" evidence or reasoning. In *Beard v. Dollar General Stores, Inc*., 2005 WL 399514 (E.D. La. Feb 17, 2005), this Court confronted an argument similar to the one presented by Plaintiff. In *Beard*, the plaintiff slipped and fell on a marble which, the plaintiff reasoned, had to have been on the floor for at least ten to fifteen minutes since no one else had been in the aisle for that period of time.[22] The Court held that "this evidence is not sufficient to raise a genuine issue of material fact as to the temporal element of constructive notice. And without the temporal element, the statute does not permit the 'inference of constructive notice.'"[23] *See also Watson v. TJ Maxx*, 2009 WL 1940976, at *3 (E.D. La. July 6, 2009) (rejecting plaintiff's 'negative' reasoning that if plaintiff was in bathroom for 2-3 minutes and if only other person who walked through hallway during another employee's fifteen minute break did not drop the piece of paper on which plaintiff slipped, then piece of paper must have been on the floor for a long period of time.)

In two of the cases cited by Plaintiff, constructive notice on the part of the defendant was found based on circumstantial evidence.[24] However, the facts of that case are distinguishable from the facts and circumstances here as there was evidence and a finding that the condition at issue in in these cases was a *recurring condition* known to the defendant *Patin v. Evangeline Downs of Louisiana, Inc.,* 3 So.3d 638 (La.App. 3 Cir. 2009) (employees testified that it was not uncommon

---

[20] R. Doc. 46, Opposition at pp. 8.
[21] *Id.*
[22] *Id*. at 3.
[23] " *Id.* (citations omitted).
[24] 99-1630 (La. App. 3 Cir. 3/1/00) 758 So.2d 327

for food to spill on the buffet floor on the casino on Friday nights due to high volume of customers); to occur on a regular basis. *Henry v. Wal-Mart Stores. Inc.,* (melted condition of substance on floor of frozen food aisle is evidence that it had been on floor long enough for it to melt).

Further, *Blackman v. Brookshire Grocery Company,* 07-348 (La. App. 3 Cir. 10/3/07) 966 So.2d 1185, which plaintiff argues is persuasive here, is also distinguishable. In *Blackman*, the plaintiff slipped on spilled spaghetti sauce in the spaghetti aisle. The appellate court affirmed the finding of constructive notice on the part of the merchant based on three factors: 1) direct evidence that the spaghetti sauce had been on the floor for at least three minutes, 2) there were several of defendant's employees nearby, and 3) the aisle had not been inspected for at least two hours prior to the fall. Although the *Blackman* court did use the presence of several of defendant's employees in the vicinity of the hazardous condition as a factor in finding constructive notice on the part of the defendant, there was also <u>direct evidence</u> bearing upon the "temporal element," i.e. testimony by a disinterested customer who saw the spill and reported it to the defendant's manager prior to the plaintiff's fall. Thus, *Blackman* is clearly distinguishable from the instant case.[25]

Plaintiff also attempts to rely on *Carter v. Zurich Am. Ins. Co.,* No. CIV.A. 11–125–JJB, 2012 WL 702270 (M.D.La. Mar. 1, 2012), where the court noted that some temporal element had been established based on a twenty to twenty-five second window. However, a critical factual distinction for that court arose from the position of two employees standing and facing the spill location, without obstructions being noted, as well as being close to the spill location with the plaintiff's slip and fall occurring right in front of them.[26] The court noted the importance of the <u>immediate proximity</u> of the employees to the fall when it held that this case differed from other

---

[25] See, *Blackman,* supra, at 1189-90.
[26] *Id.* at 1.

cases where the employees "were further away and/or engaged in some task."[27] *See Davis v. Target Corp. of Minnesota,* CIV.A. 11-0802, 2012 WL 3158875, at *4 (E.D. La. Aug. 3, 2012) (distinguishing *Carter*). Here, Plaintiff alleges that "two Hobby Lobby employees were in the vicinity of the subject area prior to Mrs. Troullier's fall."[28] However, Plaintiff has presented no evidence as to how close the employees actually were to the area in which Plaintiff fell. Instead, employee, Sandra Clarke, testified she was stuck up in the front of the store in an area called the box[29] and she was dealing with customers, filling bags, and processing refunds, among many other tasks.[30] Further, she testified that she cannot be 100 percent looking at the floor the whole time.[31] Moreover, Ms. Clarke's written statement from the incident states that "I didn't see anything the floor until I got down on the ground to see if I could see anything."[32] Thus, the alleged condition obviously would not have been visible even if she was facing the aisle. Moreover, manager, Sandra Boudreaux, testified that employee, Lauren Endorf, was at a cash register at the time of the fall.[33] However, she testified that she would have had an obstructed view.[34] Moreover, she testified that Lauren could not leave her register.[35] Thus, this case is clearly distinguishable from *Carter*, as both Hobby Lobby employees both stood at a distance from the spill location and were engaged in other tasks or had obstructed views.[36]

Plaintiff cannot offer any evidence as to how long the alleged substance was on the floor. Neither plaintiff nor her sister saw the substance on the floor until after plaintiff fell. No evidence

---

[27] *Id*. at 1, n. 1.
[28] Opposition at pp. 11.
[29] R. Doc. 46-5, at pp. 14-15.
[30] *Id* at pp. 14-17.
[31] *Id.* At pp. 16-17.
[32] R. Doc. 46-6, at pp. 103.
[33] R. Doc, 46-6, at pp. 95.
[34] *Id.* At pp. 98.
[35] *Id*.
[36] *See Davis v. Target Corp. of Minnesota,* CIV.A. 11-0802, 2012 WL 3158875, at *4 (E.D. La. Aug. 3, 2012) (distinguishing *Carter*).

has been offered that anyone else saw the substance prior to plaintiff's fall. Without any evidence as to how long this condition existed, plaintiff cannot meet the prerequisite showing imposed by La. R.S. 9:2800.6(C)(1).

**D. Defendants' Alleged Failure to Follow Policies and Procedures is a Red Herring and Irrelevant**

Next, in her Opposition, Plaintiff alleges that that Hobby Lobby policies required "each morning the management team walk their store to check the zone and recover and to double check the work performed by the stockman the night before."[37] Further, Plaintiff argues that "defendant fails to present any testimony the closing procedures were actually followed the night before the accident, the opening procedures were actually followed the morning of the accident, and any other inspections that may have been performed that day."[38] In other words, Plaintiff argues that Hobby Lobby failed to exercise reasonable care, by failing to adhere to inspection procedures, and this fact proves that the condition existed for some period of time, and thus, that Hobby Lobby had constructive notice of it.[39]

This argument fails for several reasons. First, it impermissibly shifts the burden to Hobby Lobby to prove it acted with reasonable care. The Louisiana Supreme Court has rejected a similar argument: "[B]y finding constructive notice based on a lack of uniform, mandatory clean-up procedures, the [Welch] Court effectively shifted the burden to the defendant merchant to prove that it acted reasonably."[40] Second, this argument is at odds with the plain language of La. R.S. 9:2800.6(C)(1): 'Constructive notice' means the **claimant** has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised

---

[37] R. Doc. 46, Opposition at pp. 11.
[38] R. Doc. 46, Opposition at pp. 13.
[39] R. Doc. 46, Opposition at pp. 4-5.
[40] *White,* supra, at 1085.

reasonable care."[41] And third, it conflicts with the jurisprudence that requires a plaintiff to present "positive evidence" of the existence of the condition prior to the accident.[42]

As held by the Court in *Luft v. Winn Dixie Montgomery, LLC*, 16-559, p. 8 (La.App. 5 Cir. 2/8/17); 228 So.3d 1269, 1274–75:

> **Ms. Luft's argument that the condition would have been discovered and remedied prior to the incident if Winn–Dixie had followed its inspection procedures assumes, without factual support, that there was a discoverable condition capable of remediation. Her argument essentially invokes the doctrine of *res ipsa loquitur*: because she fell, there must have been a hazardous condition. This is not enough to satisfy her burden of proof under Louisiana's merchant liability statute. Ms. Luft has offered no evidence to show that a condition existed or that a condition existed for some period of time prior to her fall. As such, Ms. Luft cannot prove that Winn–Dixie had constructive notice of the condition prior to her fall.**

*See also Martin v. Kroger Company*, 273 F.3d 1099 (5th Cir. 2001), 2001 WL 1070538, at p. *3 (whether Kroger conducted sufficient inspections or used reasonable care in maintaining the store is simply not relevant to the issue of constructive notice, i.e., whether the hazardous condition had existed long enough that it would have been discovered if Kroger had exercised reasonable care); *Boeshans v. Petsmart, Inc.*, 06-606 (La.App. 5 Cir. 1/16/07), 951 So.2d 414 (even the lack of a specific plan to warn customers of a wet floor is irrelevant when the plaintiff fails to produce evidence that defendant had any notice of the liquid's presence on the floor prior to the fall); *Pollet v. Sears Roebuck & Co.,* 46 Fed.Appx. 226 (5th Cir.2002) (whether or not Sears followed their own policies was irrelevant, when Plaintiff had no evidence to prove constructive notice); *see also Dubroc v. Wal-Mart Louisiana, LLC*, CV 1:15-02698, 2016 WL 6999468, at *4 (W.D. La. Nov. 29, 2016), *aff'd sub nom. Dubroc v. Wal-Mart Louisiana, L.L.C.,* 689 Fed.Appx. 825 (5th Cir.2017).  Here, it is clear that Plaintiff has failed to carry her burden of establishing the existence

---

[41] *Luft v. Winn Dixie Montgomery, LLC*, 16-559, p. 8 (La.App. 5 Cir. 2/8/17); 228 So.3d 1269, 1274–75
[42] *Id.*

9

of genuine issues of material fact with regard to the contested element of notice.

### E. Plaintiff's Argument that the Unpreserved Surveillance Video Creates an Issue of Fact with Respect to Constructive Notice is Without Merit

An adverse inference based on the destruction of potential evidence is predicated on the "bad conduct" of the defendant.[43] Therefore, Plaintiff must show that Hobby Lobby acted in "bad faith" with regard to the unpreserved video to establish that he is entitled to an adverse inference.[44] She has failed to do so.

Plaintiff's contentions regarding the unpreserved video are two-fold: (1) There were cameras in the "vicinity" of where Plaintiff fell and (2) Plaintiff has not been provided the video via discovery. Neither of these contentions demonstrates any bad faith on the part of Hobby Lobby. Sandra Boudreaux, the manager from Hobby Lobby, testified that there was no surveillance cameras in the vicinity in which Plaintiff allegedly fell and it was not an area that would have been captured on video.[45] Moreover, Hobby Lobby has already responded to discovery requests in this matter, whereby it stated that "surveillance video did not capture the incident."[46]

In this case, Plaintiff's contention that the unpreserved video would provide evidence that Hobby Lobby knew or should have known of the hazard is unsubstantiated. As discussed above, the area where Plaintiff allegedly fell is not visible on camera, thus even if a video was preserved, the parties would be unable to determine when and/or how the foreign substance came to be on the ground, or when the area was last inspected. Thus, contrary to Plaintiff's claims, even if the video surveillance from the day of Plaintiff's fall was preserved, Plaintiff would still lack any evidence to establish notice.

---

[43] *King v. Illinois Cent. R.R.*, 550, 556 (5th Cir. 2003).
[44] *Id*.
[45] R. Doc. 50-2, Deposition of Boudreaux, at pp. 118-120.
[46] R. Doc. 41-5, Answer to Interrogatory No. 10.

Here, Plaintiff cites to *Patrick v. Tractor Supply Co.,* CV 16-10755, 2017 WL 396301, at *2 (E.D. La. Jan. 30, 2017), to support her argument that summary judgment should be denied. However, in that case, plaintiff filed a motion seeking default judgment, to strike pleadings, or an adverse inference based on spoliation of evidence. The instant Plaintiff has filed no similar Motion in this case and thus, the issue is not before this Court. Moreover, in *Tractor Supply*, Plaintiff argued that Defendant willfully and intentionally destroyed or disposed of relevant video footage that showed Plaintiff immediately after the incident. In holding that *Tractor Supply* had <u>not</u> spoliated video surveillance evidence, the Court reasoned that the area of the accident was not captured on Tractor Supply's surveillance and that Tractor Supply had no duty to preserve footage of other areas. *See also, Batiste v. United Fire & Cas. Co*., 17-482, p. 18 (La.App. 5 Cir. 3/14/18); 241 So.3d 491, 504, wherein that court held that "that preservation of additional pre-incident or post-incident video would not have aided the Batistes in proving the necessary elements of their claim, specifically, the notice requirement." Moreover, the court found that "we find absolutely no evidence in the record to substantiate the Batistes' claim that Veron's Supermarket intentionally destroyed surveillance video, we conclude that this is not an issue that requires our review because the relevant video that was preserved, coupled with the sworn testimony of Veron's Supermarket's employees, convinces us that no genuine issue of material fact remains and that the Batistes have failed to establish that they will be able to carry their burden at trial of proving all necessary elements of their claim under La. R.S. 9:2800.6."

Simply put, the plaintiff would have the precise burden that she now faces in the event Hobby Lobby operated its store without any video surveillance, whatsoever. By that, the plaintiff would still be in the position of needing to prove that Hobby Lobby had either actual or constructive notice of the alleged incident prior to her alleged occurrence. Again, a review of

plaintiffs Memorandum in Opposition, no doubt, shows that she has not offered any evidence that would create a genuine issue of material fact sufficient to defeat the defendant's pending Motion. To employ the presumption otherwise would be to treat the failure to produce evidence under the terms of strict liability, such that the mere failure to produce evidence, regardless of the reason, would trigger the adverse presumption. This is not the standard.

**WHEREFORE,** for the reasons set forth herein and in Defendants' memorandum in support of Motion for Summary Judgment, Defendants move this court to grant its Motion for Summary Judgment against Plaintiffs on the grounds that the pleadings, admissions and sworn affidavits on file show that there is no genuine issue as to material fact, and that Defendants are entitled to judgment as a matter of law.

Respectfully submitted,
**WANEK KIRSCH DAVIES LLC**

/s/ *Lindsay G. Faulkner*
**PETER J. WANEK (23353)**
**LINDSAY G. FAULKNER (33863)**
**KATHRYN T. TREW (34116)**
1340 Poydras St., Ste. 2000
New Orleans, LA  70112
Telephone: (504) 324-6493
Facsimile: (504) 324-6626
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by placing same in the U.S. Mail, postage prepaid and properly addressed or via electronic mail this 5th day of November, 2021

/s/ *Lindsay G. Faulkner*